**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CROZER-CHESTER MEDICAL CENTER | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CROZER-CHESTER NURSES | : | |
| ASSOCIATION/PENNSYLVANIA | : | No. 11-7300 |
| ASSOCIATION OF STAFF NURSES | : | |
| AND ALLIED PROFESSIONALS, | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM ON CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS**</u>

**BAYLSON, J.**                                                                                          **June 29, 2012**

**I.    Introduction**

Presently before this Court are Plaintiff's and Defendant's concurrent Motions for

Judgment on the Pleadings. This action involves a labor dispute between Crozer-Chester Medical

Center ("Crozer") and Crozer-Chester Nurses Association/Pennsylvania Association of School

Nurses and Practitioners ("Union"). Crozer and the Union were parties to a collective bargaining

agreement ("CBA"), which was in effect at all times relevant to this case. Crozer urges this Court

to vacate the labor arbitration award (<u>see</u> Compl. attached to Pl.'s Mot. J. Pleadings as Ex. 6)

("Award") of Arbitrator David Koff ("Arbitrator") reinstating Stephanie Tunstall, RN

("Grievant") to her position. The Union asks this Court to enforce the labor arbitration award.

Having reviewed the Arbitrator's lengthy decision, this Court finds the Arbitrator

carefully considered the issues, the parties' contentions, the facts, and the law and supported his

decision with rational reasoning. For this and the reasons discussed below, the Union's Motion will be GRANTED in part and DENIED in part, and Crozer's Motion will be DENIED.

## II.      Factual Background and Procedural History

Although the reviewing court must "defer to the arbitrator's factual findings," some discussion of the background to the case will be helpful in following the court's reasoning. See Citgo Asphalt Refining Co. v. Paper Workers Int'l Union Local No. 2-991, 385 F.3d 809, 816 (3d Cir. 2004).

On February 24, 2011, Crozer terminated Grievant from her position as a registered nurse for violating Crozer's workplace rule for her failure to use the Spectralink wireless system properly on one of her patients. Compl. ¶ 12. This system keeps an electronic record of patients' vital signs and also communicates by radio wave through wireless telephones to all the nurses working on the floor. Award at 4-5.

In the incident that resulted in termation, Grievant brought the patient to a lower floor for some testing. Id. at 7. Upon returning to her floor with the patient, Grievant failed to push the "resume" button on the Spectralink central monitor, which would have turned her patient's monitor back on. Id. at 8. Shortly thereafter, the patient stopped breathing and subsequently died. Id. Grievant's failure to use the equipment properly did not cause the patient's death. Id. However, it prevented the patient's cardiologist from ascertaining the precise cause of death. Id.

Crozer has levels of progressive discipline for employees: Informal Counseling, Level I Warning, Level II Warning, Suspension, and, finally, Termination. Compl. ¶ 7. Termination is reserved for "extremely serious cases or when no improvement is shown even after disciplinary suspension." Id. Prior to Grievant's discharge in February 2011, Grievant received a three-day

suspension in March of 2010 for practicing outside the scope of nursing practice. Id. ¶ 13.

Additionally, within the three years preceding her termination, Grievant committed two minor

offenses for which she received counseling. Id.

Crozer and the Union were parties to a collective bargaining agreement with a term

running from June 5, 2008 until June 8, 2011. Compl. ¶ 4. The CBA covers the terms and

conditions of employment for part-time and full-time registered nurses at Crozer. Id. The CBA

provides in relevant part that "Crozer shall have the right to discharge, suspend or discipline any

employee for just cause after proper investigation by management which may include a review by

Human Resources Department . . . ." Id. ¶ 5. The CBA also indicates that disciplinary action is

"usually, but not necessarily, progressive in nature." Pl.'s Mem. Law Support Mot. J. Pleadings ¶

3. However, the CBA also states that the goal of progressive discipline is to correct behavior and

not solely to punish the employee. See Compl. attached to Pl.'s Mot. J. Pleadings as Ex. A-2 at 2.

The CBA explains that upon termination, if the disagreement is not satisfactorily settled,

the matter can be appealed to an impartial arbitrator "who would be selected in accordance with

the rules of the American Arbitration Association applicable to labor arbitrations." Compl.

attached to Pl.'s Mot. J. Pleadings as Ex. A-1(2) at 36. Finally, the CBA states that the

arbitrator's decision shall be "final and binding upon the parties." Def.'s Br. Support Mot. J.

Pleadings at 2.

The arbitration hearing took place on October 6, 2011. Award at 1. The parties agreed

the Arbitrator should determine whether Crozer discharged the Grievant for "just cause" and if

not, what the remedy should be. Id. In the Award, the Arbitrator indicated that Crozer had the

burden of proving by a preponderance of evidence that it had "cause" and the termination was

"just." Award at 10. The Arbitrator explained that Crozer and the Union agreed that there was no question that Crozer had "cause" since the Grievant did not reactivate the monitoring equipment as she was supposed to. Id. Therefore, the only remaining issue for the Arbitrator to decide was whether the discharge for the improper use of the monitoring equipment was "just." Id. The Arbitrator rephrased this as whether the discharge was proportionate in light of the nature of the infraction and the Grievant's past record. Id.

The Arbitrator did not agree with Crozer that the Grievant's infraction taken with her previous discipline record, justified termination. Award at 11. Based on the testimony, the Arbitrator found that "the Grievant's discipline record and the nature of the Grievant's misconduct neither individually nor in concert support a termination." Id. From the conclusion that the termination was not "just," the Arbitrator determined that a five-day suspension was appropriate in order to "call attention to the seriousness of the offense." Id.

Following the arbitration hearing, Crozer filed a Complaint in this Court seeking to vacate the arbitration award. (ECF No. 1). The Union filed an Answer and Counter-claim (ECF No. 4) relative to the Plaintiff's Complaint seeking to enforce the award on December 5, 2011, and Crozer filed an Answer (ECF No. 8) on December 21, 2011. The parties filed cross-motions for judgment on the pleadings on January 17, 2012 (ECF Nos. 10-11).

III.     **The Parties' Contentions**

A.     **Plaintiff's Motion**

In support of Crozer's Motion for Judgment on the Pleadings, Crozer argues that the Arbitrator injected his own heightened standard for termination of "deliberate insubordination" in place of the agreed-upon "just cause" standard. Pl.'s Mem. Law Support Mot. J. Pleadings ¶

15. Crozer contends that the Arbitrator injected this heightened standard despite the fact that the language in the CBA prohibited the arbitrator from modifying the CBA, and that the parties did not contemplate the "deliberate insubordination standard." Id. ¶¶ 16-17. Crozer argues that since Grievant had been suspended within the past twelve months, the proper next level of discipline was termination. Compl. ¶ 12.

Crozer also argues that the Arbitrator created his own "unique remedy" by agreeing to the Union's proposal of a five-day suspension for Grievant with full reinstatement. Pl.'s Mem. Law Support Mot. J. Pleadings ¶ 18. Crozer contends that this remedy was not contemplated by the CBA. Id. ¶ 19. Moreover, Crozer notes that Crozer Human Resources had "never issued a second consecutive suspension, in lieu of termination, when the employee had previously been suspended for a serious infraction within the past 12 months . . . ." Id. ¶ 20. Crozer argues that this violates the "law of the shop," or Crozer's normal employer disciplinary practices (citing Timken Co. v. Local 1123, United Steelworkers, 482 F.2d 1012, 1014 (6th Cir. 1973)). Pl.'s Reply Support Mot. J. Pleadings at 5.

Crozer claims that the award does not "draw its essence" from the CBA between Crozer and the Union and that the Arbitrator went beyond the scope of his authority under Article XIV of the CBA. Compl. ¶ 23. Crozer therefore argues that the award is null and void. Id.

**B.    Defendant's Motion**

The Union counters that the Arbitrator simply answered the question presented to him by the parties: whether there was "just cause" for discharging the Grievant. Def.'s Br. Support Mot. J. Pleadings at 9. The Union argues that the Arbitrator did not inject a "heightened standard" but instead used the language of "deliberate insubordination" to "situate" the Grievant's rule

violation in the context of her good faith, relatively minor prior discipline history, and her twelve years of dedicated service. Id. at 8. The Union contends that the award does in fact "draw its essence" from the CBA. Id. at 9. Moreover, it specifically cites to case law indicating that since the CBA does not include a definition of "just cause," the parties bargained for "contractual ambiguity." Id.

The Union also argues that the Arbitrator's decision in no way adds to or modifies the language of the CBA. Id. at 10-11. The Union states that since the CBA does not prohibit the modification of penalties in discipline arbitrations, the Arbitrator "acted within his authority pursuant to the CBA." Id. at 11. In addition, since there is no language in the CBA limiting the arbitrator's authority in fixing a remedy, the Arbitrator's award should be enforced. Id. at 12.

Finally, The Union argues that Crozer's arguments lacks merit and that Crozer had no reasonable chance to prevail. Def.'s Br. Support Mot. J. Pleadings at 12-13. The Union contends that Crozer brought this action merely to delay compliance with the Arbitration award. Id. at 13. The Union therefore requests that Crozer pay its attorney's fees and costs arising from this action. Id. at 12.

## IV.    Legal Standards

### A.    Jurisdiction

This Court has jurisdiction under § 301 of the Labor-Management Relations Act of 1947, codified at 29 U.S.C. § 185.

### B.    Motion for Judgment on the Pleadings

A court may only grant a motion under Federal Rule of Civil Procedure 12(c) if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is

entitled to judgment as a matter of law." Nesmith v. Independence Blue Cross, No. 02-cv-2894, 2004 WL 253524, at *3 (E.D. Pa. Feb. 10, 2004) (quoting Corestates Bank, N.W. v. Huls Am., Inc., 176 F.3d 187, 193 (3d Cir. 1999)). In deciding a motion for judgment on the pleadings under Rule 12(c), courts use the same standard as when deciding a motion to dismiss under Rule 12(b)(6). Nesmith, No. 02-cv-2894, 2004 WL 253524, at *3 (citing Constitution Bank v. DiMarco, 813 F. Supp. 154, 157 (E.D. Pa. 1993)). Thus, the motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998). The Court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences therefrom in favor of the nonmoving party. Consol. Rail Corp. v. Portlight Inc., 188 F.3d 93, 94 (3d Cir. 1999).

Similarly, as in 12(b)(6) motions, the Court may look only to the facts alleged in the pleadings and any attachments. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994) (discussing the 12(b)(6) standard); Hayes v. Cmty. Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991) (discussing the 12(c) standard). Exhibits attached to a pleading may be considered on a 12(c) motion, since under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). See also U.S. Fid. & Guar. Co. v. Tierney Assocs., Inc., 213 F. Supp. 2d 468, 470 n.2 (M.D. Pa. 2002) ("Consideration of the content of documents to which a complaint makes reference in deciding a Rule 12 motion is, of course, appropriate.").

**C.    Judicial Review of Arbitration Award**

Courts play a very limited role in reviewing the decision of an arbitrator appointed

pursuant to a collective bargaining agreement. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc. 484 U.S. 29, 36 (1987). Consequently, courts are "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Id. In other words, labor arbitration awards are presumed valid. Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 280 (3d Cir. 2004). A court must confirm an arbitration award that draws its essence from the CBA since the parties bargained for a procedure in which the arbitrator and not a court would interpret the agreement. Nat'l Ass'n of Letter Carriers, AFL–CO v. United States Postal Serv., 272 F.3d 182, 185 (3d Cir. 2001); United Parcel Serv., Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousement and Helpers of Am., Local Union No. 430, 55 F.3d 138, 141 (3d Cir. 1995).

An arbitration award draws its essence from the CBA "if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context and any other indicia of the parties' intention." Major League Umpires Ass'n, 357 F.3d at 280 (quoting United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379-80 (3d Cir. 1995)). Thus, a district court must not tamper with an arbitration decision that draws its essence from the CBA even if another interpretation of the CBA makes more sense or if the court would have reached a different result. Major League Umpires Ass'n, 357 F.3d at 280, 283-84; Suburban Transit Corp., 51 F.3d at 380-81.

Simply put, a court can only vacate an arbitrator's award "if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement." Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996). Manifest disregard is established when an arbitrator's decision is "'totally unsupported by principles of contract construction and the law of

the shop.'" Suburban Transit Corp., 51 F.3d at 379 (quoting News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990)); see also Major League Umpires Ass'n, 357 F.3d at 280. Legal or factual error does not rise to the level of manifest disregard. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam); Exxon Shipping,73 F.3d at 1295-96. Moreover, alleged misinterpretation of the agreement does not permit judicial intervention. Garvey, 532 U.S. at 509. Nor does an ambiguity in the arbitrator's opinion allow a court to vacate the award. Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 301 (3d Cir. 2001). The decision is "subject to a standard of only minimal rationality." Citgo, 385 F.3d at 817 (quoting Exxon Shipping,73 F.3d at 1297). In sum, as long as the arbitrator was interpreting the CBA and was acting within the scope of his authority, this Court must confirm the award even in the face of serious error. Garvey, 532 U.S. at 509.

Nevertheless, there are some situations in which a court should overturn an arbitrator's award. See, e.g., (Citgo, 385 F.3d at 820). An arbitrator has the authority to decide only the issues actually submitted. Matteson v. Ryder System Inc., 99 F.3d 108, 112 (3d Cir. 1996). Although this Court's review of an arbitration award is "highly deferential," courts do not simply "rubber stamp arbitrators' interpretations and decisions . . . ." Citgo, 385 F.3d at 816 (citing Matteson, 99 F.3d at 113). An arbitrator's award based on "general considerations of fairness and equity as opposed to the exact terms of the CBA, fails to derive its essence from the CBA." Citgo, 385 F.3d at 817 (quoting MidMichigan Reg'l Med. Ctr–Clare v. Prof'l Emps. Div., 183 F.3d 497, 502 (6th Cir. 1999)). Finally, a court may vacate an award if it violates a "well defined and dominant public policy discerned by reference to the laws and legal precedents and not from general considerations of supposed public interest." Exxon Shipping, 73 F.3d at 1291 (quoting

Suburban Transit Corp., 51 F.3d at 381).

**V.     Discussion**

    **A.     "Just Cause"**

This Court agrees with the Union that the Arbitrator did not demonstrate a manifest disregard for the CBA. Rather, the Arbitrator's interpretation can rationally be derived from the agreement and the parties' intentions. The parties bargained for an arbitrator to interpret their contract. The CBA further states that Crozer has the right to discharge any employee for "just cause" after proper investigation by management. Compl. attached to Pl.'s Mot. J. Pleadings as Ex. A-1(2) at 47. It is clear from the Arbitrator's opinion that he did in fact apply the "just cause" standard, and not the heightened standard of "deliberate insubordination." Indeed, the Arbitrator explicitly stated "the standard I am to apply to resolve this case is "just cause." Award at 10. The Arbitrator was then forced to interpret the phrase "just cause" before applying it to the facts at hand since the CBA did not define it.

It is within the province of an arbitrator to interpret ambiguous, undefined phrases where such contractual ambiguities exist. Exxon Shipping, 73 F.3d at 1296 (citing Suburban Transit Corp., 51 F.3d at 380-381). In determining the meaning of "just cause," the Arbitrator stated, "[t]he parties agreed at the hearing that the standard I am to apply to resolve this case is 'just cause' . . . . Accordingly, the Employer has the burden to prove by a preponderance of the evidence that it had 'cause' and that the penalty of discharge was 'just.'" Award at 10. He then determined that there was no issue over whether Crozer had "cause" since the Union conceded that point, and that the issue was more narrowly whether the discharge was "just." Id. The Arbitrator interpreted "just" to mean whether the discharge was proportionate or "reasonably

related to the nature of the offense and the Grievant's past record." Id.

In evaluating whether the discharge was proportionate to the infraction, the Arbitrator determined that Grievant was not "deliberately insubordinate" in misusing the monitoring equipment. Award at 12. Deliberate insubordination was one of many factors the Arbitrator considered in determining whether the discharge was "just" given the circumstances. The discussion of deliberate insubordination related to the Arbitrator's interpretation of "just" as being "reasonably related to the nature of the offense and the Grievant's work record." Award at 13. At no time did the Arbitrator stray from the "just cause standard."

The CBA does not define the phrase "just cause." The fact that Crozer disagrees with the Arbitrator's interpretation is "not a ground for vacating the decision." See Exxon Shipping, 73 F.3d at 1296. Crozer's contention that its own interpretation of "just cause" is more reasonable than the result decided by the Arbitrator is not the relevant test. See Suburban Transit Corp., 51 F.3d at 380-381 (citing News America Publ'ns, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990) ("in reviewing an arbitral award, courts must recognize that the parties bargained for the arbitrator's construction of the agreement")). Crozer could have defined "just cause" specifically in the CBA or negotiated for a definition of "just cause," but it did not.

Viewed in light of the CBA's language and context, this Court finds the Arbitrator's interpretation can rationally be derived from the CBA. Since the Arbitrator's decision is subject to only minimal rationality and the Arbitrator was acting within the scope of his authority, this Court must affirm the award.

### B.     Arbitrator's Remedy

This Court will also uphold the Arbitrator's remedy. The same narrow standard of review

"applicable to the arbitrator's finding of a violation of the CBA is applicable to the arbitrator's choice of remedy for the violation." Teamsters Union Local No. 115 v. DeSoto, Inc., 725 F.2d 931, 937 (3d Cir. 1984). The issue presented to the arbitrator was: "Did the Employer discharge the Grievant for just cause? If not, what shall be the remedy?" (emphasis added). Award at 1. Therefore, the parties agreed that it was within the authority of the Arbitrator to determine a remedy should the Arbitrator find Crozer discharged Grievant without "just cause." Id. The CBA states that the arbitrator does not have the power to "add to, subtract from, or modify in any way any of the terms of this Agreement." Compl. attached to Pl.'s Mot. J. Pleadings as Ex. A-1(2) at 36. The remedy must therefore "draw its essence" from the CBA. Nat'l Ass'n of Letter Carriers, 272 F.3d at 185.

The Arbitrator, based on his findings and interpretation of "just cause," determined that Crozer's termination of Grievant was not "just." Upon making this determination, the Arbitrator then had the duty of deciding an appropriate remedy. Nothing in the language of the CBA limits the arbitrator's authority in fashioning a remedy, other than that he may not add to, subtract from, or modify the terms of the CBA. Compl. attached to Pl.'s Mot. J. Pleadings as Ex. A-1(2) at 36.

The CBA only states that Crozer has the right to "discharge, suspend or discipline any employee for just cause after proper investigation by management . . . ." Award at 3. The CBA lists certain offenses for which immediate termination is allowed. Compl. attached to Pl.'s Mot. J. Pleadings as Ex. A(2) at 3. The CBA does not give Crozer an unconditional right to terminate an employee for the Grievant's conduct. Id. Notably, improper use of the Spectralink monitoring system is not one of the offenses listed in the CBA that may result in immediate termination. Id.

In addition, the terms of the CBA do not foreclose a five-day suspension as an appropriate

-12-

remedy even though Grievant received a prior suspension within the past year. Given the Arbitrator's interpretation of "just" termination as proportionate or "reasonably related to the offense," this Court finds the remedy can be rationally derived from the agreement. See, e.g., Super Tire Engineering Co. v. Teamsters Local Union No. 676, 721 F.2d 121, 125 (3d Cir. 1983) (concluding that the terms of the contract were not so clear as to foreclose the arbitrator's interpretation that a warning was required prior to termination, even though the violation at issue was listed in the CBA as grounds for immediate dismissal).

In this case, the remedy draws its essence from the CBA because it adheres to the policy set forth in the CBA that "progressive discipline is to correct inappropriate behavior and not solely to punish the employee." See Compl. attached to Pl.'s Mot. J. Pleadings as Ex. A-2 at 2. In addition, it does not modify or add to any of the terms in the CBA.

Finally, this Court does not find that the Arbitrator's interpretation rises to the level of "manifest disregard" for the CBA. Crozer argues that the Award violates the "law of the shop" since the Hospital's Human Resources Department has allegedly never issued a second consecutive suspension in lieu of termination. Pl.'s Reply Support Mot. J. Pleadings at 5. The Union does not agree. Def.'s Response Support Mot. J. Pleadings at 3. The Court does not see any indication in the record to support Crozer's argument, but even if there were such evidence, Crozer would not be entitled to overturn the Award. Courts are not authorized to "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Citgo, 385 F.3d at 815. Moreover, if the "law of the shop" foreclosed nothing short of termination in this case, appealing to an impartial arbitrator to determine if Crozer discharged the Grievant for "just cause" would have been a pointless

-13-

exercise. In sum, this Court must affirm the Arbitrator's remedy.

### C.    Attorney's Fees

It is within this Court's discretion to award the prevailing party attorneys' fees and costs incurred in this action where the losing party resisted "the arbitrator's award without any justification or reasonable chance to prevail." <u>Local 825 of Int'l Union of Operating Engineers v. Tuckahoe Sand & Gravel</u>, No. 06-cv-4784, 2007 WL 1797657, at *11 (D.N.J. 2007) (citing <u>Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.</u>, 625 F.2d 1092, 1094 (3d Cir. 1980)); <u>Teamsters Local Union No. 764 v. J.H. Merrit & Co.</u>, 770 F.2d 40, 43 n.2 (3d Cir. 1980) (finding district court did not abuse discretion in awarding attorney's fees given its doubts concerning party's good faith in refusing to abide by the arbitrator's decision).

In this case, while this Court will uphold the arbitration award, and Crozer's motion for judgment on the pleadings must fail, Crozer's position was not unreasonable. Unlike the employer in <u>Chauffeurs</u>, Crozer adhered to the parties' CBA and submitted to arbitration. Although ultimately unsuccessful, there is no indication that Crozer acted in bad faith in challenging the Award. Therefore, an award of costs and attorney's fees is not justified. The Union's request is denied.

## VI.    Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Union's Motion for Judgment on the Pleadings. The Court DENIES Crozer's Motion for Judgment on the Pleadings. The arbitrator's award is affirmed.

An appropriate Order follows.

O:\CIVIL 11\11-7300 Crozer-Chester Med. v Crozer-Chester Nurses\Crozer Memo J on Pleadings.wpd